UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
GERARD LEONARD,

                          Petitioner,

- v. -

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                          Respondent.
---------------------------------------------------------x

OPINION & ORDER

No. 15-CV-5757 (NG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N Y

★ FEB 0 6 2017 ★

BROOKLYN OFFICE

**GERSHON, United States District Judge:**

Plaintiff Gerard Leonard brings this action seeking reversal of the decision of Carolyn Colvin, the Acting Commissioner of Social Security (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). 42 U.S.C. §§ 401 *et seq*. After a hearing on August 14, 2014, at which plaintiff appeared with his attorney, Administrative Law Judge Bruce MacDougall (the "ALJ") concluded that Leonard was not disabled because, though unable to perform past relevant work, he had the residual functional capacity ("RFC") to perform light work. That decision became final on August 10, 2015 when the Appeals Council denied plaintiff's request for review. Plaintiff then timely commenced this action on October 5, 2015, and both parties moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's motion is denied and plaintiff's motion is granted insofar as he seeks remand for further administrative proceedings.

1

## I. Background

### A. Factual and Medical Evidence Before the ALJ

Plaintiff was born on September 16, 1967 and was forty years old at the alleged onset date of his disability—November 30, 2007. Administrative Record ("AR.") at 103. Prior to that, plaintiff had worked as a police officer from 1993 to 2007, and as an aide for the Development Disabilities Institute from 1986 to 1993. For the final 18 months of his time as a police officer, plaintiff was assigned to desk work as a result of his physical condition. In 2007, he retired on disability from the police force. AR. at 47-48, 119.

Plaintiff applied for DIB based on orthopedic injuries, including injuries to his knees and spine. Plaintiff describes his back as always aching and, at times, with a shooting, stabbing pain. AR. at 132. Plaintiff's last insured date was December 31, 2013.

In a function report that plaintiff completed on May 6, 2013, he indicated that his daily activities include: reading the paper, walking the dog, going to the health club to stretch, riding a bike (at the gym), doing limited chores, and watching television. AR. at 125. This report also indicates that he is no longer able to do some basic household chores, such as mowing the lawn, carrying heavy packages, vacuuming, and doing repairs around the house. *Id.* Though he can prepare simple meals on a daily basis, standing for too long while doing so is painful and his wife often does the cooking. *Id.* at 126-27. As to traveling, plaintiff is able to walk, drive a car, and use public transportation, all of which he can do independently. Plaintiff is also capable of shopping for food, clothing, and home supplies, which he does for a few hours biweekly. Plaintiff's alleged disability has not affected his ability to socialize, which he does on a daily basis, such as by going to church, the bookstore, or out with friends. AR. at 129. As to physical limitations, plaintiff states that he is very restricted in his ability to lift, cannot stand for extended

2

periods of time, cannot walk for long periods without taking a break, can only sit for short periods, can climb stairs (but must do so slowly), and has difficulty kneeling, squatting, and reaching. AR. at 129-30. As discussed below, these observations are largely consistent with plaintiff's testimony at the ALJ hearing—that his back pain is not so debilitating he is unable to do anything, but rather that the pain imposes significant limitations on his ability to function.

Plaintiff's treatment for back pain began in 2008 when he sought medical care from Dr. Marc Yland—an anesthesiologist and pain management specialist. At that time, plaintiff stated that he had low back pain radiating to his left leg, and that a knee injury he had three years prior was now resulting in an aching/stabbing pain in his knee. An MRI taken on April 23, 2008 revealed desiccation to one disc in his back and a disc herniation. Dr. Yland diagnosed intervertebral disc disorder, neuropathic pain, and radiculitis. AR. at 176. During this period, plaintiff attended physical therapy, and Dr. Yland administered epidural steroid injections in May and June of 2008, which alleviated plaintiff's pain. AR. at 177-82. On July 13, 2010, Leonard sought another injection from Dr. Yland, which he administered, but it did not alleviate the pain. AR. at 186-88. Dr. Yland provided another injection on August 3, 2010, which led to some reduction in pain. AR. at 190-92.

On March 21, 2013 (shortly before filing for disability), plaintiff sought treatment with Dr. Sebastian Lattuga, a board certified orthopedic surgeon, for back pain and left leg pain. AR. at 163. He rated his back pain as a nine on a scale from one to ten. When evaluating the 2008 MRI discussed above, Dr. Lattuga noted an extruded disc and a disc bulge. In his report, he noted plaintiff had spasms and restricted flexion, extension, and left and right turning. He also documented that the motor exam was not within normal limits, as plaintiff's sensation was "altered." AR. at 163. Dr. Lattuga diagnosed a lumbar disc herniation with radiculopathy. AR.

at 164. As treatment, Dr. Lattuga discussed both surgical and non-surgical options, such as chiropractic care, physical therapy, steroid injections, and medication. *Id.* Plaintiff chose the non-surgical route and proceeded with chiropractic care, physical therapy, and lumbar spine injections.[1]

Another MRI was conducted on October 12, 2013 and submitted to Dr. Lattuga; it revealed a near complete resolution of the disc herniation previously seen at L5-S1. However, a disc bulge remained at L4-5 with mild stenosis and retrolisthesis. AR. at 194.

On December 4, 2013, plaintiff returned to Dr. Lattuga's office because of back pain and left leg pain. On this occasion, he was seen by Dr. Lattuga's associate, Dr. Demetrios Mikelis. Dr. Mikelis diagnosed lumbar disc herniation with radiculopathy and discussed the same treatment options that Dr. Lattuga previously offered. Again, plaintiff opted for the non-surgical interventions. AR. at 173-74.

Dr. Lattuga completed two medical reports—one on March 22, 2013 and another on August 12, 2014. In his 2013 report, Dr. Lattuga concluded that plaintiff could stand/walk for two hours per day and could sit for two hours per day. AR. at 166. The 2014 report was largely consistent with the 2013 report. In the 2014 report, Dr. Lattuga concluded that plaintiff was limited to occasionally lifting ten pounds, could only stand/walk for less than two hours per day, could sit for less than four hours per day, and could push/pull no more than ten pounds. AR. at 199.

On May 14, 2013, at the behest of the Social Security Administration, plaintiff was examined by consultative examiner Dr. Dutta, who is a general surgeon and not an orthopedic

---

[1] At the hearing, plaintiff testified that he had had two surgeries on his right knee, which did not alleviate the pain. AR. at 52. Plaintiff cited these failed surgeries as his basis for his hesitation to undergo back surgery.

specialist.[2] He diagnosed left shoulder pain, disc desiccation and retrolisthesis of L5-S1 with history of spinal canal stenosis, and post arthroscopic repair of meniscus and shaving of the patella in the right knee. AR. at 170. He concluded that plaintiff had "mild limitation for sitting and standing" and a "moderate limitation for walking, bending frequently, and lifting heavy weight on a continued basis." AR. at 171.

**B.    Hearing Before the ALJ**

ALJ MacDougall held a hearing on August 14, 2014, at which only the plaintiff testified. AR. at 43-62. Plaintiff testified that he had had surgery in 1995 on his knee and again in 2005, and a shoulder surgery in 1997. AR. at 49, 55. As reported in his initial application for benefits, plaintiff stated that his knee pain significantly limits his ability to walk and sit. AR. at 52-53. Plaintiff further testified that he no longer does maintenance work around the house (e.g. caring for the lawn), but is able to do some things to maintain a household, such as dusting or going shopping. When the hearing turned to plaintiff's back, plaintiff stated that it hurts a lot, but the ALJ stated, "You know, I saw an MRI. It looked like actually your back has kind of gotten better." AR. at 56. In response, plaintiff said, "It doesn't feel it." *Id.* When asked about how his back affects him, plaintiff said that it causes extreme pain, and that, as he was sitting at the hearing testifying, it was causing his shins to have pins and needles. AR. at 57. As to how his back limits his daily activities, plaintiff stated that it interferes with his ability to climb stairs, walk, and sit. AR. at 58. The ALJ also asked plaintiff about Dr. Lattuga's report, which concluded that he could lift only ten pounds occasionally. Specifically, the ALJ asked whether plaintiff could indeed only

---

[2]    At that time, plaintiff was on the following medications: (1) Celebrex; (2) Advil; (3) Allegra; (4) Azelastine; and (5) Fluticasone propionate. AR. at 169.

lift ten pounds. In response, plaintiff said that he could pick up more than ten pounds, but that Dr. Lattuga wanted him to limit such activities. AR. at 59.

After the ALJ's examination, plaintiff's attorney asked him a few questions, which elicited the fact that plaintiff can sit for only ten to fifteen minutes before feeling the need to stand up, and that he can only stand in one position for five minutes. AR. at 60-62.

### C. ALJ's Decision

The ALJ determined that plaintiff had the following severe impairments: right knee degenerative joint disease and lumbar degenerative disc disease. AR. at 34. He then concluded that plaintiff did not have an impairment or combination of impairments that met the severity of a listed impairment. In making that determination, the ALJ specifically considered Listings 1.02 (joint dysfunction) and 1.04 (spinal disorders). Ultimately, the ALJ determined that plaintiff had the RFC to perform light work, including sitting and standing for six hours in an eight-hour workday, lifting ten pounds frequently (twenty pounds occasionally), and only occasionally performing postural activities.[3] AR. at 35. In reaching his conclusion, the ALJ gave "little" weight to Dr. Lattuga—a spinal and orthopedic specialist—because his opinion was "conclusory, providing little explanation of the evidence relied upon in forming the opinion. Further, the opinion offered appears to be sympathetic to the claimant and relies upon subjective complaints rather than the objective evidence of the record. The treatment records consist of limited, relatively conservative care with gaps." AR. at 36-37. In contrast, the ALJ gave "some weight" to the consultative examiner Dr. Dutta, who concluded that plaintiff had a "mild limitation in sitting and

---

[3] The ALJ seemingly relied on plaintiff's statement at the hearing, discussed above, to conclude that plaintiff could lift ten pounds frequently and twenty pounds occasionally. However, it is improper to conclude that just because someone is physically capable of lifting a given weight that it is advisable for him to do so, especially when his doctor has expressly stated otherwise.

standing and a moderate limitation in walking, bending frequently and lifting heavy weights on a continued basis." AR. at 37.

To further support his conclusion, the ALJ cited to evidence in the record that he found contradicted plaintiff's claims regarding the severity of the alleged disability. For example, the ALJ highlighted that plaintiff: cooks, cleans, does laundry, shops, bathes and dresses independently, socializes with friends, goes to the gym, and walks his dog. For these reasons, the ALJ determined that plaintiff could perform a full range of light work, and, thus was not disabled. AR. at 37.

### D. Evidence Submitted to the Appeals Council

On January 12, 2015, plaintiff returned to Dr. Lattuga complaining again of back pain. He described pain that interfered with his daily functions and a constant shooting pain that was worse with lifting, carrying, walking, bending, and standing up. Dr. Lattuga diagnosed lumbar disc herniation with radiculopathy, instability, and neurogenic claudication. At this time, plaintiff decided to have spinal surgery, specifically a posterior spinal fusion and laminectomy at L4-5 and L5-S1. AR. at 21-23. Dr. Lattuga performed this surgery on March 25, 2015. AR. at 12-19.

## II. DISCUSSION

### A. Standard of Review

A claimant is entitled to disability benefits if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant has both "the general burden of proving that he or she has a disability within the meaning of the Act" and the specific "burden of proving his or her case at steps one through four of the sequential five-step framework

established in the SSA regulations." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (internal quotation omitted).

In reviewing a denial of disability benefits, a district court may set aside the Commissioner's determination if the factual findings are unsupported by substantial evidence or if the decision is based on legal error. *Cichocki*, 729 F.3d at 175-76. An ALJ's "failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004). Before the court can decide whether the Commissioner's decision is supported by substantial evidence, it must be satisfied that the claimant "received a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." *Cancel v. Colvin*, 2015 WL 865479, at *2 (S.D.N.Y. Mar. 2, 2015) (internal quotation omitted). Receiving such a full hearing imposes on the ALJ "an affirmative duty to fully and fairly develop an administrative record." *Id.*

### B. Plaintiff's Arguments

Plaintiff makes two arguments in support of remand. First, the Appeals Council failed to properly consider new evidence regarding plaintiff's back surgery. Second, the ALJ violated the treating physician rule when he gave more weight to the consultative examiner's opinion than to Dr. Lattuga's opinion.

#### 1. New Evidence

Plaintiff argues that the Appeals Council erred by not considering newly presented evidence—namely his visit to Dr. Lattuga in January of 2015 for continued back pain and the surgery Dr. Lattuga performed in March of 2015. Under the regulations, "the Appeals Council will consider new and material evidence only if it relates to the relevant period on or before the date of the ALJ's decision." *Suttles v. Colvin*, 654 Fed. Appx. 44, 47 (2d Cir. 2016). "Evidence

8

is material if it is relevant to the claimant's condition during the time period for which benefits were denied, and there is a reasonable possibility that the new evidence would have influenced the ALJ to decide the claimant's application differently." *Id.* Evidence that postdates the ALJ's decision is not automatically irrelevant, because subsequent evidence may "suggest[] that the condition may have been more severe in the past than previously thought." *Id.*

At the outset, I note that the Commissioner, at oral argument on January 9, 2017, argued that the Appeals Council did indeed consider this new evidence, but concluded that the ALJ's decision was not contrary to the weight of the evidence (including this new evidence). In support of this argument, the Commissioner cited the following portion of the Appeals Council's decision:

> We also looked at a medical report from Dr. Sebastian Lattuga dated January 12, 2105. The Administrative Law Judge decided your case through December 31, 2013, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

AR. at 2.

I do not agree with the Commissioner's reading of this paragraph. The Appeals Council specifically stated that the new evidence is "about a later time." Then, immediately after noting the evidence post-dates the relevant period, it draws the conclusion (as indicated by its use of the word "therefore") that the new evidence does not affect the disability decision. The only reasonable inferences to be drawn are either that the Appeals Council: (1) disregarded the new evidence solely based on its date, or (2) considered whether the evidence related back to the relevant time period, but concluded that it did not.[4]

---

[4] Had the Appeals Council incorporated this new evidence into the record because it did indeed relate back to the relevant period, but nonetheless concluded that the ALJ's decision was justified, it would have used different language to convey that point. For example, it might have said, "This new information, though about a later time, relates back to the relevant period

9

If the Appeals Council relied exclusively on the date of the evidence, this conclusion is certainly wrong, as the date alone of new evidence is not determinative if it relates back to the relevant period. If the Appeals Council did evaluate whether the evidence related back to the relevant period and concluded that it did not, this also was error. The 2015 report is consistent with Dr. Lattuga's prior report and substantiated plaintiff's ongoing complaints regarding the intensity, persistence, and limiting effects of his claimed disability. *See Santiago-Jiminez v. Comm'r of Social Sec.*, 2016 WL 5942318, at *3 (S.D.N.Y. Oct. 13, 2016). Further, there is no indication that this report, which postdates the ALJ's decision by five months, was the result of a condition that materialized only after the ALJ's decision. *See Farina v. Barnhart*, 2005 WL 91308, at *5 (E.D.N.Y. Jan 18, 2005).

Plaintiff argues that there is a reasonable possibility Dr. Lattuga's report from January of 2015 and the surgical report from March of 2015 would have influenced the ALJ's decision because they dispel (or at least call into question) some of the ALJ's conclusions regarding the severity of plaintiff's alleged disability. For example, the ALJ discounted Dr. Lattuga's opinion because: (1) it was "sympathetic" to the claimant; (2) it relied on subjective complaints rather than objective evidence in the record; and (3) the "treatment records consist[ed] of limited, relatively conservative care with gaps." AR. at 36-37. The Commissioner argues that the new evidence is immaterial because the possibility of surgical intervention had already been referenced before the ALJ.

As plaintiff suggests, Dr. Lattuga's 2015 report does undermine the reasons the ALJ cited when affording little weight to Dr. Lattuga's opinion. The report noted an MRI, though it is unclear

---

considered by the ALJ. Nonetheless, had the ALJ considered this new evidence, it would not have affected the decision about whether you were disabled at the time."

which MRI Dr. Lattuga was referencing, that showed an extruded disc at L5-S1 and a disc bulge at L4-5, and he diagnosed disc herniation, radiculopathy, instability, and neurogenic claudication. AR. at 21-23. This is contrary to the ALJ's conclusions that the record lacked objective evidence for plaintiff's complaints, and that Dr. Lattuga was merely being sympathetic to plaintiff. It also undermines the ALJ's statement at the hearing that, based on an MRI taken in October of 2013, it "look[s] like actually your back has kind of gotten better." AR. at 56. Even if one disc hernia was resolved, as the October 2013 MRI indicated, the need for back surgery calls into question the conclusion that plaintiff was not experiencing other back problems—such as the disc bulge the 2013 MRI identified at L4-5—sufficient to cause the alleged pain. AR. at 194. As to the actual surgery, that is not a "conservative" treatment, which was another ground the ALJ relied upon in rejecting Dr. Lattuga's opinion. AR. at 37. While it is true, as the Commissioner argues, that surgery was on the table as a treatment option when the ALJ evaluated the case, plaintiff's decision to forgo that treatment affected the ALJ's ultimate conclusion. Accordingly, there is a reasonable possibility that plaintiff's decision to eventually undergo surgery would affect the ALJ's analysis.

Therefore, of the three grounds the ALJ specifically enumerated when discounting Dr. Lattuga's opinion, two of them are undermined by the new evidence from 2015. As to the third ground, that Dr. Lattuga's opinion was founded on sympathy for the plaintiff, discussed further below, it also becomes less plausible in light of the surgery.

Because there was a reasonable possibility that the new evidence would have influenced the ALJ's decision, the Appeals Council should have considered it.[5] Its failure to do so warrants

---

[5] In *Suttles v. Colvin*, 654 Fed. Appx. 44, 47 (2d Cir. 2016), the court concluded that, even if the Appeals Council improperly failed to consider new evidence, this error was harmless because "there was nevertheless no reasonable possibility that the consideration of [the new evidence] would have altered the ALJ's decision." The same is not true here. For the reasons

remand. *See Santiago-Jimenez v. Comm'r of Social Sec.*, 2016 WL 5942318, at *3 (S.D.N.Y. Oct. 13, 2016). Accordingly, on remand, the ALJ should consider whether this new evidence affects his initial conclusion.

### 2. Treating Physician

Plaintiff also argues that the ALJ violated the treating physician rule when he gave more weight to the consultative examiner, Dr. Dutta, than to Dr. Lattuga. As stated previously, the ALJ gave "little" weight to Dr. Lattuga's conclusions because he:

> provid[ed] little explanation of the evidence relied upon in forming the opinion. Further, the opinion offered appears to be sympathetic to the claimant and relies upon subjective complaints rather than the objective evidence of the record. The treatment records consist of limited, relatively conservative care with gaps.

AR. at 36-37. As to Dr. Dutta, the ALJ gave his opinion "some weight" because it was generally consistent with the examination findings. AR. at 37.

Since I am remanding the case based on the new evidence submitted to the Appeals Council, it is unnecessary for me to decide whether the ALJ gave too little weight to Dr. Lattuga's opinion. Because the new evidence may affect the ALJ's evaluation of Dr. Lattuga's opinion, the ALJ should consider the record as a whole and reevaluate the medical opinions accordingly.

However, I note that some of the reasons the ALJ gave for discounting Dr. Lattuga's opinion were unwarranted. The ALJ faulted Dr. Lattuga for being sympathetic to plaintiff and not basing his opinion on objective evidence.[6] However, there is nothing in Dr. Lattuga's reports that

---

stated above, there is a reasonable possibility the 2015 examination and surgery would have altered the ALJ's decision.

[6] A doctor should not be faulted for being sympathetic to a patient. If the ALJ really meant that Dr. Lattuga was biased or unreliable because of sympathy, he should have pointed to a reason for such a conclusion.

12

indicates his opinion was based on sympathy rather than objective evidence. His 2013 report was based on a clinical examination of plaintiff. His treatment notes indicate that plaintiff had spasms, which, according to the regulations, represent objective evidence of an impairment. 20 C.F.R. § 404.1529(c)(2). He also documented a limited range of motion, as discussed previously, and tenderness. Additionally, the report referenced the MRI that showed an extruded disc at L5-S1 and L4-5. AR. at 163-64. These findings support a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. Not only do these findings constitute objective evidence, contrary to the Commissioner's position that the record lacks objective findings, but they also require the ALJ to further evaluate the intensity and persistency of the pain plaintiff alleges stems from those conditions. *See* 20 C.F.R. § 404.1529(b).

That being said, I do not minimize other reasons the ALJ offered for reaching the conclusion that he did. For example, there are certainly long gaps in treatment during the relevant period, and plaintiff was not on pain medication for some of the years in question. However, given the new evidence and the deficiencies highlighted above, the ALJ, on remand, should reconsider the weight he affords to Dr. Lattuga's opinion.[7]

As to Dr. Dutta, his conclusions were vague. He stated that plaintiff had "moderate" limitations on his ability to walk, bend, and lift heavy items, and "mild" limitations on his ability to sit and stand. These are the types of terms that courts have found to be insufficient to support a determination that a plaintiff is not disabled. *See Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013); *Brady v. Colvin*, 2016 WL 1448644, at *8 (E.D.N.Y. Apr. 12, 2016). Therefore, if on

---

[7] As to the gaps in treatment, it is possible that the ALJ, on remand, will conclude that plaintiff was not disabled for the entirety of the period at issue. The question the ALJ will have to answer is whether plaintiff was disabled at any time during the period of 2007 to 2013.

remand the ALJ intends to rely on medical opinions that are contrary to those of Dr. Lattuga, he may do so only if those opinions are clear and specific as to plaintiff's functional limitations. Additionally, Dr. Dutta is not an orthopedic specialist, but rather a general surgeon, which should also factor into the weight the ALJ affords to Dr. Dutta's opinion, as compared to that of Dr. Lattuga. *See Petrie v. Astrue*, 412 Fed. Appx. 401, 407 (2d Cir. 2011) ("The regulations provide that an opinion of a specialist regarding medical issues related to his or her area of specialty must be given more weight than the opinion of a source who is not a specialist.").

Accordingly, on remand, the ALJ should reconsider the medical evidence in its entirety in light of the new evidence submitted to the Appeals Council, and, after considering this new evidence, the ALJ should reevaluate the weight he is giving to the medical opinions in the record.

## III. CONCLUSION

For the reasons set forth above, plaintiff's motion is granted to the extent that I reverse the ALJ's decision and remand the case pursuant to sentence four of 42 U.S.C. § 405(g). The Commissioner's motion for judgment on the pleadings is denied. The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

/s/ *Nina Gershon*
NINA GERSHON
United States District Judge

Dated: February 6, 2017
Brooklyn, New York